Patrick G. Conroy, OSB #223806
Email: patrick@elpnw.com
Randy J. Harvey, OSB #116714
Email: randy@elpnw.com
**EMPLOYMENT LAW PROFESSIONALS NORTHWEST LLC**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

*Of Attorneys for Plaintiff Joanne Di Paola*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JOANNE DI PAOLA,<br>Plaintiff;<br>v.<br><br>CORVALLIS NEIGHBORHOOD HOUSING SERVICES, INC. dba DEVNW, a domestic nonprofit;<br><br>Defendant. | Case No. 6:26-cv-2307<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Joanne Di Paola ("Plaintiff") brings this complaint against Corvallis Neighborhood Housing Services, Inc. ("Defendant" or "DevNW") as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over this action under 28 U.S.C. § 1331, as the case involves United States law.

///

2.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial District in and around Lane County, Oregon. Venue is proper in this division pursuant to Local Rule 3-2.

**PARTIES**

3.

Plaintiff is a Florida resident.

4.

Defendant is a domestic nonprofit which employed Plaintiff.

**FACTUAL ALLEGATIONS**

5.

Plaintiff worked for Defendant.

6.

Plaintiff is a Christian.

7.

In 2021, DevNW's Chief Executive Officer Emily Reiman ("Reiman") encouraged Plaintiff to apply to be Co-Chair on the Equity Approach Stewardship Council of which Plaintiff was already a member.

8.

In 2023, for a diversity initiative, DevNW hired an independent contractor to lead all its employees in diversity, equity, and inclusion trainings.

9.

The contractor, Keela Johnson ("Johnson"), held mandatory meetings purportedly as a "safe space" to talk about race, equity, and inclusion topics. Per an email from CEO Reiman "we expect staff to attend all-staff events, and to prioritize them over most other work activities."

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

10.

Among the materials for the sessions Johnson provided was the following:




According to the materials, the people on the right side of the chart are essentially supposed to supplicate themselves to the people on the left side of the chart.

11.

On April 5, 2023, during one meeting, Johnson led a discussion about gender issues. Johnson asserted that "fetuses should not be gendered in utero." Another coworker, Anna Hindley responded to Johnson saying that when she was pregnant, the doctors had told Hindley that the child was a girl. Johnson then told her that "that was a biblical/religious perspective." Hindley responded that she was not religious, trying to steer the conversation away from this issue. And Johnson told her, "well this is how it is in America."

12.

Plaintiff then said she was Christian and could see where Hindley was coming from. Johnson then began an extended criticism of the Christian religion. From this point on, Plaintiff's coworkers took Johnson's comments as license to criticize Plaintiff for her religion (and oddly enough, race) using diversity terminology. Among other comments, during the meeting, Plaintiff's coworkers said: "Christianity was just a white person's religion," and that Plaintiff "did not have to be white to hold racist views" and that Plaintiff hated transgender people because of her religion.

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

13.

After the meeting, Plaintiff's coworkers (including the CEO) then continued this criticism of Plaintiff and her religion *by email* as follows:

14.

One wrote: "the institution of religion and specifically Christianity in this country, being directly utilized to string and hang folks to their death, is a disconcerting contributor to the above… I am uncertain if my teammate Joanne's self-examination of action+impact is being considered in earnest based on the response to learning edges." According to the same person, Plaintiff had "a resistance to personal learning when it came to religious identity," i.e., change your religious views.

15.

Another coworker wrote: "The conflating of religious beliefs not getting in the way of the provision of services as equity and the ability to do 'this work'… Myself wanting more thought and reflection from Joanne on learning edges. The reason I asked the question about learning edges was to try to put the onus of Joanne's continued participation on the Council back on Joanne; to understand from Joanne if she had learned anything about herself and whether there is a willingness or resistance to further personal learning generally AND more specifically when it crosses into her religious identity…Curious about why religion/Christianity seems to be viewed as inflexible and static rather than a dynamic evolving system of beliefs that can and does include multiple interpretations and viewpoints. (In writing this, I'm not even certain what I am meaning is coming through – but essentially, I mean that to be 'good Christians, Jews, Catholics, fill in the blank' doesn't necessarily require we ascribe to all elements of a faith's teachings, and that I believe we need to question and challenge those aspects of the faith that don't fit our personal values, and that the two (being good and questioning/challenging) can co-exist)."

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

16.

Even Defendant's CEO decided to participate:

> I wonder what I would need to see (and what the group would need to see, and what [Plaintiff] would need to see) for [Plaintiff] to be held accountable in order to move forward with membership on the team…I have a strong sense that there were additional things stated during the ID Mapping sessions that are troubling and out of alignment with our organizational values…in that moment, and everyone who holds a non-Christian identity, more broadly, and denies the reality that everyone in our country has daily experience with Christianity, no matter their religious identity. It's part of the water we all swim in, and our experiences with Christianity are no less valid than those of people who identify as Christian. (How would a similar statement have sounded, if a white-bodied person had dismissed a black-bodies person's insights into white privilege because they were not white?)…In that meeting, I heard an apology from [Plaintiff], but not a real grappling with the impact that her words had on Keela or the other members of the ID Mapping group. I worry about both the hurt her words caused to some members of the group, and also what was modeled as acceptable behavior to new members of our organization. For me, part of any accountability path forward would involve acknowledgement and repair of both of these, and until then, I have to acknowledge that my trust in [Plaintiff] as a member of this team is very broken."

The message continues to criticize Plaintiff's religion for several hundred more words.

17.

As these sessions were mandatory, Plaintiff had to attend twelve total. Without being overly exhaustive, as the emails show, the sessions primarily consisted of criticizing Plaintiff for her Christianity and criticizing her for not apologizing hard enough.

18.

At one of the final meetings, Plaintiff said that she wanted to resign from the council. Reyes said that if Plaintiff resigned, Reyes was worried that DevNW (Defendant) would be seen as a place that does not welcome Christians. Plaintiff responded that this was exactly how she felt. After that, Plaintiff resigned from the council position (but not her job).


**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

19.

From May 2023 until summer 2024, Plaintiff only had to physically come into Defendant's office 3-5 times as almost all the employees were working remotely.

20.

By Summer 2024, Plaintiff was working remotely and privately considering a move to Florida. In or around July 2024, Plaintiff sent her employer a form asking for proof of income to secure a mortgage for a new home in Florida.

21.

On August 12, 2024, Plaintiff provided a letter to Interim Human Resources Director Zakia Ford ("Ford"), CEO Emily Reiman, and the Board of Directors specifically complaining about how she had been treated on the basis of her religion.

22.

Responding to this complaint, Ford wrote "I know that your plans have changed about resigning in September and that you have some thinking to do about transitioning." The language about Plaintiff "resigning" from her job was entirely fictional. At the time Plaintiff was not considering resigning and had not indicated that to anyone at the organization. In a responsive email, Plaintiff indicated that she was considering submitting her complaint to BOLI.

23.

Ford asked Plaintiff when she was moving, because Defendant was going to terminate her employment once she moved out of state. When Plaintiff said that she had placed her plans to move on hold, Ford told her that her employment would not continue into 2025 regardless.

24.

Through the end of Plaintiff's employment, each employee's email signature (including Plaintiff's) contained the following disclaimer: "DevNW and Community LendingWorks' offices are currently operating remotely during regular business hours via email and tele/video conferencing, and in-person by appointment only or for certain classes."



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

25.

On January 4, 2025, Plaintiff and her family moved out of state. When she went to put in her change of address with HR, she was told she was being terminated by the end of the month.

26.

On January 21, 2025, Defendant terminated Plaintiff's employment effective January 23, 2025.

**FIRST CLAIM FOR RELIEF**

**Religious Discrimination in Employment (42 U.S.C. § 2000e et seq.)**

27.

Plaintiff incorporates paragraphs 1-26 by reference.

28.

Plaintiff exhausted her administrative remedies by filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue letter.

29.

Regarding religion, Defendant's employment practices are governed by the Civil Rights Act of 1964, not the views of a consultant. Title VII still protects workers from religious discrimination by their employers.

30.

As described above, Defendant violated Plaintiff's rights by subjecting her to religious discrimination in the workplace and by terminating her employment in part due to her religion.

31.

Plaintiff is entitled to back pay, front pay and/or reinstatement, compensatory damages, punitive damages, prejudgment interest, declaratory and injunctive relief, reasonable attorney fees and costs, and such other relief as the Court deems just and proper.

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

**SECOND CLAIM FOR RELIEF**

**Religious Discrimination in Employment (ORS § 659A.030)**

32.

Plaintiff incorporates paragraphs 1-26 by reference.

33.

Under Oregon law, it is unlawful for an employer to terminate an employee because of their religion.

34.

As described above, Defendant violated Plaintiff's rights by subjecting her to religious discrimination in the workplace and by terminating her employment in part due to her religion.

35.

Pursuant to ORS 659A.885, Plaintiff is entitled to economic damages (front pay and back pay) and noneconomic damages, reasonable attorney fees, pre- and post-judgment interest, costs, disbursements, and equitable relief.

**THIRD CLAIM FOR RELIEF**

**Retaliation for Opposing Religious Discrimination in Employment (42 U.S.C. § 2000e-3)**

36.

Plaintiff incorporates paragraphs 1-26 by reference.

37.

Plaintiff exhausted her administrative remedies by filing a charge with the Equal Employment Opportunity Commission and receiving a right to sue letter.

38.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for employers to terminate their employees because they opposed religious discrimination.

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

39.

Plaintiff sent Defendant a letter via email complaining about religious discrimination.

40.

Literally in the email responding to that letter, Defendant's human resources person responded by pretending Plaintiff was resigning and Defendant eventually terminated Plaintiff's employment.

41.

Plaintiff is entitled to back pay, front pay and/or reinstatement, compensatory damages, punitive damages, prejudgment interest, declaratory and injunctive relief, reasonable attorney fees and costs, and such other relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

**Retaliation for Opposing Religious Discrimination in Employment (ORS § 659A.030)**

42.

Plaintiff incorporates paragraphs 1-26 by reference.

43.

Under Oregon law, it is unlawful for an employer to terminate an employee because they complained about religious discrimination.

44.

Plaintiff sent Defendant a letter complaining about religious discrimination. Defendant's human resources person responded by pretending Plaintiff was resigning. Defendant eventually terminated Plaintiff's employment soon thereafter.

45.

Pursuant to ORS 659A.885, Plaintiff is entitled to economic damages (front pay and back pay) and noneconomic damages, reasonable attorney fees, pre- and post-judgment interest, costs, disbursements, and equitable relief.

///



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Backpay including lost employment benefits through trial, in an amount not less than $261,000;
2. Noneconomic damages in the amount of $100,000;
3. Reinstatement, or alternatively front pay and lost employment benefits in the amount of $169,000, and all other appropriate equitable relief; and
4. Reasonable costs, disbursements, attorney's fees, prevailing party fees, and pre- and post-judgment interest.

DATED 21st day of October 2026.

Respectfully submitted,

**EMPLOYMENT LAW PROFESSIONALS**

By: */s/ Patrick G. Conroy*

Patrick G. Conroy, OSB #223806
Email: patrick@elpnw.com
Randy J. Harvey, OSB #116714
Email: randy@elpnw.com
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

*Of Attorneys for Plaintiff Joanne Di Paola*